UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

VICENTE ACOSTA YUPANGUI,                    )
                                            )
                 Petitioner,                )
                                            )
         v.                                 )    Case No. 2:25-cv-884
                                            )
GREG HALE, IN HIS OFFICIAL                  )
CAPACITY AS SUPERINTENDENT OF               )
NORTHWEST STATE CORRECTIONAL                )
FACILITY, PATRICIA HYDE, IN                 )
HER OFFICIAL CAPACITY AS                    )
ACTING BOSTON FIELD OFFICE                  )
DIRECTOR, IMMIGRATION AND                   )
CUSTOMS ENFORCEMENT,                        )
ENFORCEMENT AND REMOVAL                     )
OPERATIONS; VERMONT SUB-OFFICE              )
DIRECTOR OF IMMIGRATION AND                 )
CUSTOMS ENFORCEMENT,                        )
ENFORCEMENT AND REMOVAL                     )
OPERATIONS; TODD M. LYONS, IN               )
HIS OFFICIAL CAPACITY AS                    )
ACTING DIRECTOR, U.S.                       )
IMMIGRATION AND CUSTOMS                     )
ENFORCEMENT; KRISTI NOEM, IN                )
HER OFFICIAL CAPACITY AS                    )
SECRETARY OF THE UNITED STATES              )
DEPARTMENT OF HOMELAND                      )
SECURITY; MARCO RUBIO, IN HIS               )
OFFICIAL CAPACITY AS SECRETARY              )
OF STATE; AND PAMELA BONDI, IN              )
HER OFFICIAL CAPACITY AS U.S.               )
ATTORNEY GENERAL,                           )
                                            )
                 Respondents.               )

**OPINION AND ORDER**

Before the Court is Petitioner Vicente Acosta Yupangui's

amended petition for a writ of habeas corpus under

28 U.S.C. § 2241. ECF No. 10-2.[1] As discussed at the status conference held on November 17, 2025, he seeks an individualized bond hearing before an Immigration Judge. *See* ECF No. 10-2. The Government contends that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), and that his petition lacks merit and should be denied. ECF No. 11. This Court held a status conference on November 17, 2025, at which the parties agreed that another hearing would not be necessary. The parties agree that the legal issue presented by Petitioner's amended petition is the same issue presented as that in *Piedrahita-Sanchez v. Turek et al*, No. 2:25-cv-875, in which this Court issued an Opinion and Order on November 14, 2025. *See generally* Opinion and Order, *Piedrahita-Sanchez v. Turek et al*, No. 2:25-cv-875, (D. Vt. Nov. 14, 2025), ECF No. 13; *see also* ECF No. 11 at 1-2 ("While reserving all rights, including the right to appeal, Federal Respondents submit this abbreviated response in lieu of a formal responsive memorandum to preserve the legal issues and to conserve judicial and party resources in light of this Court's prior decision in *Piedrahita-Sanchez v. Turek et al.*, No. 25-cv-875-wks, ECF No. 13.").

---

[1] Because the Court hereby grants Petitioner's second motion to amend his petition for writ of habeas corpus, ECF No. 10, it cites to his second amended petition.

2

At the status conference on November 17, 2025, the parties stated that they would file (1) a second amended habeas petition (petitioner); and (2) a response to the petition (respondents). They have now filed these briefs, and the Court GRANTS Petitioner's second motion to amend his habeas petition (ECF No. 10).

## I.    Factual Background

Petitioner entered the United States on or around April 10, 2004, and has continuously resided in the United States since that time. *See* ECF No. 10-2 at 3. On May 19, 2014, he filed an affirmative asylum petition with the United States Citizenship and Immigration Services. *Id.*

Petitioner lives with his family in Cambridge, Vermont, and has four children (all of whom are citizens of the United States). *See* ECF No. 10-2 at 6. He runs a roofing company, and on November 5, 2025, Petitioner alleges that he was at a Maplefields gas station on his way to work with his crew when he was violently arrested and detained by Customs and Border Protection. *Id.*

Petitioner has a heart condition, has suffered two heart attacks in the last couple of years, and states that he must stay adequately hydrated to maintain his health—however, his family is concerned that he has nausea and dizziness at his

detention facility because he does not have adequate access to drinking water. *Id.* at 7.

Petitioner has no criminal record and states that he would not be a flight risk. *Id.* He cannot read or write in any language. *Id.*

At the November 17, 2025 status hearing, both parties told the Court that they believed Petitioner had been served with a Notice to Appear ("NTA") on November 7th, 2025 (two days into his detention). Respondents believed that Petitioner had been in the custody of Border Control from November 5th – November 7th, at which time he was transferred to Immigration and Customs Enforcement when space opened up. He is currently detained at the Northwest State Correctional Facility in Vermont. ECF No. 11 at 2-4. According to Respondents,[2] however, the NTA has not yet been filed because of internal confusion.

The Government maintains that Petitioner is subject to mandatory detention under the authority of 8 U.S.C. § 1225(b)(2). ECF No. 11 at 1.

Petitioner filed his original petition for a writ of habeas corpus in this Court on November 14, 2025. ECF No. 1. That same day, this Court issued a Temporary Restraining Order and Order to Show Cause which, among other things, ordered that

---

[2] As stated in the November 17, 2025 status conference.

"Petitioner shall not be removed from the District of Vermont pending further order of this court." ECF No. 3 at 2.

## II. <u>Jurisdiction and Legal Standard</u>

District courts have jurisdiction under 28 U.S.C. § 2241 to hear claims that an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Petitioners have the burden to demonstrate that their detention violates the Constitution or federal law. *See, e.g.*, 28 U.S.C. § 2241(c)(3); *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).[3]

At the November 17, 2025 status hearing, the parties discussed naming an immediate custodian as a respondent, and Petitioner's counsel stated her intent to file a motion to amend the petition that day to correct the defect. The Petitioner has since filed his "Second Motion to Amend Petition for Writ of Habeas Corpus," which added Greg Hale in his official capacity as Superintendent of Northwest State Correctional Facility as a Respondent, ECF No. 10, and the Court hereby GRANTS leave to amend.

---

[3] In this case, Respondents do not argue that Petitioner failed to exhaust his administrative remedies. Other district courts have addressed, and waived, exhaustion in similar circumstances. *See, e.g., Lopez Benitez v. Francis et al.*, No. 1:25-CV-05937-DEH, 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588, *37-41 (S.D.N.Y. Aug. 13, 2025).

### III. **Discussion**

Petitioner seeks a bond hearing before a neutral officer employed by the Department of Homeland Security. The Government contends that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), and that his petition lacks merit and should be denied. At the November 17, 2025 status conference, the Government agreed that the issues raised with regard to Section 1225 were the same as those this Court decided in *Piedrahita-Sanchez v. Turek et al*, No. 2:25-cv-875, (D. Vt. Nov. 14, 2025), ECF No. 13. The Government reserved its right to disagree with the Court's holding in *Piedrahita-Sanchez,* and stated that it is presently weighing whether or not to appeal that case. *See also* ECF No. 11 ("While respectfully disagreeing with the Court's prior decision, Federal Respondents acknowledge that, should the Court adhere to its reasoning in that decision, the Court would likely reach the same outcome in this case. Thus, in the interest of judicial economy, and to expedite the Court's consideration of this matter, Federal Respondents hereby rely upon and incorporate by reference the legal arguments they presented in *Piedrahita-Sanchez* and submit that the Court can decide this matter without further briefing and argument.").

Accordingly, the Court adopts the same analysis in this case as in that case, reproduced below.

### A. Basis for Detention

As is relevant here, two statutes principally govern the detention of noncitizens who do not have an order of removal: 8 U.S.C. §§ 1225 and 1226.  Section 1225 provides for inspection of "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States[,]" 8 U.S.C. § 1225(a)(3), where an "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States Waters)." *Id.* § 1225(a)(1).  Subject to certain exclusions the parties do not argue are applicable here, detention is mandatory under Section 1225:

> In the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

*Id.* § 1225(b)(2)(A).

Section 1226(c) governs the detention of noncitizens apprehended within the United States on criminal grounds. Section 1226(a) is a catchall provision that governs the detention of any other noncitizen apprehended by immigration enforcement and is generally understood to apply to noncitizens

7

"already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).[4]  Section 1226(a) creates a statutory right to a bond hearing before an immigration judge, but § 1225(b) and § 1226(c) call for mandatory detention.  *Id.* at 302, 305-06.

This July, the Department of Homeland Security ("DHS") adopted a new interpretation of Section 1225 of the Immigration and Nationality Act (INA), one that Respondents advance in this case.  *See Martinez v. Hyde*, No. 25-11613-BEM, 2025 U.S. Dist. LEXIS 141724, 2025 WL 2084238, at *12 (D. Mass. July 24, 2025) (describing "novel interpretation").  In September, the BIA issued a case called *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which held that all noncitizens who enter the United States without inspection are "applicants for admission" who are

---

[4] The Court notes that the Government has argued that *Jennings* supports its interpretation of Sections 1225 and 1226, because it states that 1226 applies to "certain aliens already in the country[,]" and the word "certain" means that it is not the exclusive source of detention authority for certain aliens who are already in the country.  Rather, the Court considers the *Jennings* opinion to lend support to Petitioner's reading of the statutes: at most, the opinion is ambiguous.  *See Jennings*, 583 U.S. at 288 ("Even once inside the United States, aliens do not have an absolute right to remain here.  For example, an alien present in the country may still be removed if he or she falls 'within one or more…classes of deportable aliens.' § 1227(a). That includes aliens who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission.  *See* §§ 1227(a)(1), (2).  Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal.").

"seeking admission" within the meaning of § 1225(b), no matter how long they have lived in the United States.

In this case, Petitioner has been detained pursuant to 8 U.S.C. § 1225(b)(2). It is the Government's position that, notwithstanding his roughly 21-year presence in this country, Petitioner remains an "applicant for admission" who is "seeking admission" and is subject to detention under Section 1225(b)(2). As an initial matter, the Court notes that other district courts in this Circuit have consistently rejected the Government's proposed, broad interpretation of § 1225(b)(2)(A). *See, e.g., Benitez v. Francis,* No. 25-cv-5937 (DEH), 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588, at *25 (S.D.N.Y. Aug. 13, 2025); *Samb v. Joyce,* No. 25-cv-6373, 2025 U.S. Dist. LEXIS 161109, 2025 WL 2398831, at *3 (S.D.N.Y. Aug. 19, 2025); *Gonzalez v. Joyce,* No. 25-cv-8250, 2025 U.S. Dist. LEXIS 208578, 2025 WL 2961626, at *4 (S.D.N.Y. Oct. 19, 2025); *Hyppolite v. Noem,* No. 25-cv-4304, 2025 U.S. Dist. LEXIS 197628, 2025 WL 2829511, at *8-12 (E.D.N.Y. Oct. 6, 2025); *J.U. v. Maldonado,* No. 25-cv-04836 (OEM), 2025 U.S. Dist. LEXIS 191630, 2025 WL 2772765, at *5-9 (E.D.N.Y. Sept. 29, 2025); *Perez v. Francis*, No. 25-cv-8112 (JGK), 2025 U.S. Dist. LEXIS 219356, at *5-7 (S.D.N.Y. Nov. 6, 2025); *Ortiz v. Freden*, No. 25-cv-960-LJV, __ F. Supp. 3d__, 2025 U.S. Dist. LEXIS 217654, 2025 WL 3085032, at *36-37 (W.D.N.Y. Nov. 4, 2025). Moreover, the vast majority of cases

across the country have held similarly, with a few exceptions
that the Government has cited.[5]

The Court begins its analysis with the statutory text and
plain meaning. *See United States v. Rowland*, 826 F.3d 100, 108
(2d Cir. 2016). First, the title of Section 1225 is:
"Inspection by immigration officers; expedited removal of
inadmissible *arriving* aliens; referral for hearing."
8 U.S.C. § 1225 (emphasis added). The word "arriving" in the
title indicates that it does not refer to noncitizens present
already. *See Pizarro Reyes*, No. 25-cv-12546, 2025 U.S. Dist.
LEXIS 175767, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025)
("the use of 'arriving' to describe noncitizens strongly
indicates that the statute governs the *entrance* of noncitizens
to the United States. This reading is bolstered by the fact
that 1225 clearly establishes an inspection scheme for when to
let noncitizens into the country.").

Section 1225(b)(2) provides that "in the case of an alien
who is *an applicant for admission*, if the examining immigration
officer determines that *an alien seeking admission* is not

---

[5] The Court has read and considered *Chavez v. Noem*, No. 25-cv-
2325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Vargas Lopez
v. Trump,* 2025 U.S. Dist. LEXIS 192557, 2025 WL 2780351 (D. Neb.
Sept. 30, 2025); *Oliveira v. Patterson*, No. 6:25-cv-01463, 2025
U.S. Dist. LEXIS 218128 (W.D. La. Nov. 4, 2025); and *Pena v.
Hyde*, No. 25-cv-11983, 2025 WL 2108913 (D. Mass. July 28, 2025)
and does not find them persuasive in this context.

clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A).  Under section 1225(a)(1), an "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission."  *See also Ascencio-Rodriguez v. Holder*, 595 F.3d 105, 108 n.3 (2d Cir. 2010) ("Aliens not admitted are treated as 'applicants for admission.'" (citing 8 U.S.C. § 1225(A)(1)).  Elsewhere, the INA defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).

As for the meaning of "seeking admission," this Court finds that the likely meaning is those noncitizens presenting themselves at the border, or who were recently apprehended just after entering.[6]  However, to the extent the statute may be

---

[6] As the district court in *Benitez v. Francis* analogized:

> This understanding accords with the plain, ordinary meaning of the words "seeking" and "admission." For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through

11

considered ambiguous as to whether it means either seeking the legal right to enter (Respondents) or the act of entering the country at the border or otherwise (Petitioner), the Court turns to the canons of statutory construction.  Once again, this Court agrees with many other courts that: if all "applicant[s] for admission" also are "seeking admission," then the words "seeking admission" would be surplusage.  *Ortiz v. Freden*, No. 25-cv-960-LJV, __ F.Supp.3d__, 2025 U.S. Dist. LEXIS 217654, 2025 WL 3085032, at *15-16 (W.D.N.Y. Nov. 4, 2025) ("After all, Congress simply could have said 'if the examining immigration officer determines that *an applicant for admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained.'" (emphasis in original)).

---

the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to Mr. Lopez Benitez, because he has already been residing in the United States for several years.

*Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588, at *21 (S.D.N.Y. Aug. 13, 2025).

This Court also agrees with other district courts who have observed that this reading is supported by the other subparagraphs in Section 1225(b)(2). Subparagraph (B) provides that Section 1225(b)(2)(A) "shall not apply to an alien…who is a crewman" or "who is a stowaway" and subparagraph C specifies a return procedure in the case of an alien described in subparagraph (A) who is "arriving on land." 8 U.S.C. § 1225(B), (C). The carve-outs for various means of initial arrivals into the United States suggests that those covered by Section 1225(b)(2) who are "seeking admission" refer to those individuals presenting themselves at the border (or those who have not yet effected entry, such as the noncitizen who succeeded in making it 25 yards into U.S. territory in *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)).

Similarly—and, again, following the analysis of other courts—the Court observes that the Respondents' interpretation of Section 1225(b)(2) would render the 2025 Laken Riley Act—which amended 8 U.S.C. § 1226(c)—without meaning. *See, e.g., Ortiz v. Freden*, No. 25-cv-960-LJV, __ F.Supp.3d__, 2025 U.S. Dist. LEXIS 217654, 2025 WL 3085032, at *17-18 (W.D.N.Y. Nov. 4, 2025). It is unlikely that Congress passed the Laken Riley Act to add Subsection (c)(1)(E) to the mandatory detention scheme under Section 1226(c) if those individuals were already covered by mandatory detention under Section 1225(b)(2).

13

In support of its position, the Government points to the legislative history of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which streamlined the distinct deportation and exclusion proceedings into "removal proceeding."  Respondents argue that Congress sought to discard the former regime and eradicate detention discrepancies. However, this Court shares the skepticism of other district courts faced with the argument that Congress was seeking to completely overhaul the systems of detention as well.  *See Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 U.S. Dist. LEXIS 179594, 2025 WL 2637503, at *30-32 (N.D. Cal. Sept. 12, 2025); *see also Zumba v. Bondi*, No. 25-cv-14626 (KSH), 2025 U.S. Dist. LEXIS 190052, 2025 WL 2753496, *30 n.5 (D.N.J. Sept. 26, 2025) ("The Court need not consider the legislative history because it finds the statute is clear and simply notes that Congress' stated goal was to put certain noncitizens seeking entry on more equal footing with noncitizens who were present in the United States with respect to their removal proceedings. The cited legislative history does not suggest that Congress also intended to subject all noncitizens who entered the United States without inspection to mandatory detention during their removal proceedings." (emphasis in original)); *see also Romero v. Hyde*, No. 25-11631-BEM, __ F. Supp. 3d__, 2025 U.S. Dist. LEXIS 160622, 2025 WL 2403827, at *29 (D. Mass. Aug. 19,

14

2025)(Congressional intent was not expressed as to *detention* pending the outcome of the immigration proceedings, and "[r]ealistically speaking, if Congress's intention was so clear, why did it take thirty years to notice?").

### B. Constitutional Deprivation

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), sets out a three-part test that the Second Circuit has applied when determining the adequacy of process in the context of civil immigration confinement. *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Under *Mathews*, the three factors are: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

On the first prong, Petitioner's private interest in "freedom from imprisonment" is strong. *See Velasco Lopez*, 978 F.3d at 851 ("the most significant liberty interest there is—the interest in being free from imprisonment." (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Here, Petitioner "was detained without any pre-detention, individualized determination

as to whether he posed a flight risk or any risk of
dangerousness" nor is there any indication that "there was any
material change in circumstances that triggered [Petitioner's]
sudden arrest and detention"; rather, "it appears [Petitioner]
was detained simply because" he was readily identified by
Respondents as a noncitizen engaged in the process of
petitioning for asylum as a legal path to remain in the United
States. *Hyppolite v. Noem,* No. 25-cv-4304, 2025 U.S. Dist.
LEXIS 197628, 2025 WL 2829511, at *34-35 (E.D.N.Y. Oct. 6, 2025)
(similar case in which the petitioner was detained when he
appeared for a previously calendared conference in immigration
court).

On the second prong, the Court weighs the risk as high
because "[t]he purpose of the bond hearing employed when the
government seeks to exercise its discretion in detaining a
noncitizen under § 1226(a) is to provide procedures which will
better ensure that people who are, in fact, a risk of flight or
a danger to the community are the people [who] are ultimately
detained." *Id.* Here, there were no procedural safeguards in
the form of a bond hearing, and there are no planned procedural
safeguards.[7] *Zumba v. Bondi*, No. 25-cv-14626 (KSH), 2025 U.S.

---

[7] The Government has observed that the detention under Section
1225 is not indefinite: the Petitioner could be granted
temporary parole under §§ 1225(b)(1) or (b)(2) for "urgent
humanitarian reasons or significant public benefit" or the

Dist. LEXIS 190052, 2025 WL 2753496, *29-30 (D.N.J. Sept. 26,
2025) ("the first and second *Mathews* factors weight heavily in
petitioner's favor, as she has been deprived of her liberty,
erroneously subjected to mandatory detention under § 1225 during
her removal proceedings, and denied due process protections,
including the right to seek bond.").  As there has been no bond
hearing, apparently no one has assessed Petitioner's risk of
flight and dangerousness.  The lack of procedure contributes to
an increased risk of erroneous deprivation.  *See, e.g., Black v.
Decker*, 103 F.4th 133, 152, (2d Cir. 2024) *reh'g en banc denied,*
2025 U.S. App. LEXIS 27912, 2025 WL 2989687 (2d Cir. Oct. 24,
2025) (in considering the category of people subject to
mandatory detention under the former version of Section 1226(c),
the Second Circuit held that "the almost nonexistent procedural
protections in place for section 1226(c)" contribute to a
"markedly increased…risk of an erroneous deprivation of
[p]etitioners' private liberty interest" where the only
procedural protection available was a hearing to contest whether
the petitioners in fact committed a crime that makes them
subject to mandatory detention under that statute).

---

Petitioner's detention could end once removal proceedings have
concluded.  Regardless, erroneous deprivation in the meantime
will have no procedural protections.

On the third prong, on the record currently before the
Court, the Government does not have a significant interest in
Petitioner's continued detention.  It is not authorized by
8 U.S.C. § 1225 and it serves no legitimate purpose.  *See Lopez
Benitez v. Francis et al.*, No. 1:25-CV-05937-DEH, 2025 U.S.
Dist. LEXIS 157214, 2025 WL 2371588, *36 (S.D.N.Y. Aug. 13,
2025) ("The Attorney General's discretion to detain individuals
under 8 U.S.C. § 1226(a) is valid where it advances a legitimate
governmental purpose such as ensuring the appearance of aliens
at future immigration proceedings and preventing danger to the
community." (cleaned up)).  On the other hand, the Court
recognizes that there is a governmental interest in ensuring
persons "do not commit crimes or evade law enforcement"—as such,
a bond hearing will "permit the Immigration Court to consider
those interests while also safeguarding Petitioner's significant
private interests in personal liberty and due process."  *Adonay
E.M. v. Noem*, No. 25-cv-3975, 2025 U.S. Dist. LEXIS 222247 at
*26 (D. Minn. Nov. 12, 2025).

Accordingly, the Court finds that Petitioners' due process
rights were violated, and the habeas petition must be granted.
*See Gonzalez v. Joyce,* No. 25-cv-8250, 2025 U.S. Dist. LEXIS
208578, 2025 WL 2961626, at *4 (S.D.N.Y. Oct. 19, 2025)
("Because Respondents' ongoing detention of [Petitioner] with no
process at all, much less prior notice, no showing of changes

circumstances, or an opportunity to respond, violates his due process rights,[] the Petition must be granted." (internal quotation marks and citation omitted)).

### IV. Remedy

Generally, writs of habeas corpus are used to request release from custody. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). A habeas court has "the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779-80 (2008) (noting that at "common-law habeas corpus was, above all, an adaptable remedy."). When faced with similar habeas petitions, some courts in this Circuit and outside have ordered a bond hearing or, alternatively, immediate release. *See, e.g., Perez v. Francis*, No. 25-cv-8112 (JGK), 2025 U.S. Dist. LEXIS 219356, at *5-7 (S.D.N.Y. Nov. 6, 2025) ("The Government shall ensure that the petitioner receives a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within seven (7) days of this Memorandum Opinion and Order; if no hearing is held by that deadline, the Government shall immediately release the petitioner."); *Ortiz v. Freden*, No. 25-cv-960-LJV, __ F.Supp.3d__, 2025 U.S. Dist. LEXIS 217654, 2025 WL 3085032, at *36-37 (W.D.N.Y. Nov. 4, 2025) ("[T]he [c]ourt ORDERS the respondents to provide Alvarez Ortiz with an

19

individualized bond hearing before an immigration judge **within seven calendar days of the date of this decision and order** at which the government shall bear the burden to demonstrate, by clear and convincing evidence, that he is a danger to the community or a flight risk. . . . If the respondents fail to provide such a hearing within seven calendar days, they shall immediately release Alvarez Ortiz."). Some other district courts have simply ordered immediate release. *See, e.g., Hyppolite v. Noem,* No. 25-cv-4304, 2025 U.S. Dist. LEXIS 197628, 2025 WL 2829511, at *44 (E.D.N.Y. Oct. 6, 2025) ("Hyppolite's Amended Petition for a writ of habeas corpus under 28 U.S.C. § 2241 is GRANTED. At the hearing on September 29, 2025, the Court ordered Respondents to immediately release Hyppolite from custody, and was later informed by Respondents' counsel that he was released that same day."); *Gonzalez v. Joyce*, No. 25-cv-8250, 2025 U.S. Dist. LEXIS 208578, 2025 WL 2961626, at *4 (S.D.N.Y. Oct. 19, 2025) (habeas petition granted and respondents ordered to immediately release petitioner from custody and certify compliance with a filing the next day); *Benitez v. Francis*, No. 25-cv-5937 (DEH), 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *J.U. v. Maldonado*, No. 25-cv-04836 (OEM), 2025 U.S. Dist. LEXIS 191630, 2025 WL 2772765, at *31 (E.D.N.Y. Sept. 29, 2025) ("Respondent is ORDERED to immediately release Petitioner from custody.").

Here, Petitioner clarified at the November 17, 2025 status conference that he is requesting a bond hearing, and Respondents have also argued that the proper relief, should this Court order relief, would be a bond hearing.  ECF No. 11 at 2. Accordingly, this Court orders a bond hearing and, in the alternative, immediate release.  Again, numerous other courts have fashioned similar relief.  *See, e.g., Adonay E.M. v. Noem*, No. 25-cv-3975, 2025 U.S. Dist. LEXIS 222247 at *26 (D. Minn. Nov. 12, 2025) (ordering that Petitioner is subject to detention, if at all, under Section 1226(a); ordering that a bond hearing be held within seven days of the date of the Order or in the alternative that Petitioner must be immediately released from detention).  This is the same relief that the Court ordered three days ago, in *Piedrahita-Sanchez v. Turek et al*, No. 2:25-cv-875, (D. Vt. Nov. 14, 2025), ECF No. 13.

Accordingly, the Court is ordering the relief of a bond hearing with the alternative option that the government might release Petitioner.  Indeed, nothing in the TRO (ECF No. 3) nor in this present Opinion should be construed as preventing the Government from immediately releasing the Petitioner.

### V. Conclusion

For the foregoing reasons, Petitioner's Petition for a Writ of Habeas Corpus, ECF No. 10-2, is GRANTED.  Respondent is ORDERED to hold an individualized bond hearing before an

Immigration Judge pursuant to 8 U.S.C. § 1226(a) for Petitioner, within seven (7) days. If Respondents cannot hold such a hearing, they shall immediately release Petitioner.

This Court also ORDERS a hearing for November 24, 2025 at 10:00 a.m., at which time it will inquire as to whether a hearing has been held pursuant to Section 1226(a), and/or whether Petitioner has been released.

In addition, this Court ORDERS that Paragraph 3 of its TRO, ECF No. 3, remains in effect. This Court continues to ORDER that Petitioner shall remain detained at the Northwest State Correctional Facility, and shall not be moved out of state, *to the extent that he remains detained at all*. Should Petitioner's detention at the Northwest State Correctional Facility interfere with holding a bond hearing (for example, if for some reason it is not possible to hold a bond hearing while Petitioner is detained in Vermont), the Government should immediately inform this Court. In other words, the Court is willing to adjust the restraining order to facilitate such a hearing. And, again, should the Government release petitioner, that would not violate the TRO.

Finally, as stated above, this Court GRANTS Petitioner's second motion to amend his petition for writ of habeas corpus, (ECF No. 10), and DENIES Petitioner's first motion to amend his petition as moot (ECF No. 8).

The parties are welcome to file any notices or updates in the meantime.

Dated at Burlington, in the District of Vermont, this 17th day of November 2025.

/s/ William K. Sessions III
Hon. William K. Sessions III
United States District Court